24-6221 Comanche Nation v. Ware. Mr. Carter, you may proceed. May it please the court. My name is Daniel Carter and I represent the appellants, the Fort Sill Apache Tribal Official. I'd like to reserve four minutes for rebuttal. Comanche Nation's action to shut down the Fort Sill Apache Tribe's casino is barred by sovereign immunity. Each of Comanche's three theories for circumventing sovereign immunity fell because, one, the Indian Gaming Regulatory Act, or IGRA, does not abrogate tribal immunity for this type of claim. Second, Ex Parte Young is unavailable here because, among other reasons, express statutory remedies in IGRA and RICO bar its use. And third, the tribe is the real party in interest, so even individual capacity claims are barred. The district court's order permitting two claims to proceed should be reversed, in this case dismissed in full. Starting with the first point, there's no abrogation of sovereign immunity for Comanche's claims in the IGRA. Comanche invokes 2710 D7 A2, but that provision applies only when the gaming occurs on Indian lands, there's a violation of the Tribal State Gaming Compact, and the relief sought is to enjoin Class 3 gaming. To avoid the Indian lands limitation, Comanche argues that the gaming occurs on Indian lands of another tribe, the Kiowa tribe, but that argument fails. This land has been held in trust for the Fort Sill Apache Tribe since 2001, and Comanche did not challenge that acquisition for almost 20 years later until they filed this claim. The district court correctly rejected Comanche's claims and dismissed the claims and the federal defendants as a result. This case is on all fours with Bay Mills, which held that if an argument or a claim argues that the gaming occurs outside of Indian lands, that there's no abrogation of immunity. And even what I don't understand, Mr. Carter, is you're saying it is Indian land, it's the Yes, your honor, it is the Apache's Indian lands, but if it's the Apache's Indian lands, Comanche's not making a claim that it's in violation of the IGRA. They may, they may lose on the merits, but I don't understand why that would vitiate their reliance on IGRA as an abrogation of tribal immunity. Well, there's another reason why it does not fit in that abrogation, that's because there has to be a violation of the tribal state gaming compact. And without a violation of the compact, then there's no abrogation of immunity. That's kind of circular, that seems to say any claim under IGRA, there's not jurisdiction for any claim under IGRA except correct claims, valid claims, because the claim under IGRA has been in violation of a compact. And if there wasn't any violation of compact, then... Hold on, I'm going to get this backwards. I'm going to assume that you know what I'm trying to say and respond, because... Yes, your honor, so in the Bay Mills, the court held that a claim that the game is not occurring on Indian lands falls outside of the if the claim falls on Indian lands and it's in violation of the Indian Gaming Regulatory Act and the compact. So, IGRA envisions states and tribes having class three gaming compacts, and IGRA allows a state to sue a tribe for a violation of that compact and for a tribe to sue a state in violation of that compact. The reason it sounds circular is because IGRA doesn't envision third-party claims against tribes or tribes against another tribe. Well, Comanche argues that you're running an illegal casino and that's injuring them, and that casino violates IGRA, where the state tribe compact, and doesn't the statute basically say any tribe can sue over the violation of a contract and they do have to show an injury, but haven't they plausibly alleged in the complaint an injury that's caused by the operation of the casino? So, what am I getting wrong about that? Why does the statute exclude Comanche from pursuing this claim? Because 2710 D782 only permits claims in violation of a compact. If Comanche's claims are correct, that it is the Kiowa tribe that owns these lands, then it falls outside the compact entirely, and that's this court's decision in Oklahoma that's on all fours with Bay Mills as well. In addition... No, what do you mean it falls outside the compact? It means it's not permitted by the compact, which means it violates the compact, and that's the basis for IGRA. No, your honor, IGRA does not govern gaming outside of Indian lands. Right, but we're not talking about, but there's no dispute that this is Indian land. Your claim is it's not the land of the party running the casino, of the tribe running the casino. That's your argument, I think. Well, my argument is that Fort Sopache is Indian land, so there's no violation, but Comanche alleges that it's Indian lands of the Kiowa tribe. Okay. And the compact only governs gaming on Fort Sopache Indian lands. It doesn't... No, it just... What you should say is the compact doesn't permit gaming that's not on the land of the tribe running the casino. That's why it's circular. You're saying they have to have a valid claim. If they don't have a valid claim, then there's no violation of IGRA, so there's no waiver of sovereign immunity. That's essentially your argument, the one I got mixed up in my mind before. You're saying that because there's no violation of IGRA, there's no waiver of sovereign immunity under IGRA. That's fundamentally what you're saying, is it not? No, Your Honor, because the scope of the compact only governs gaming on Fort Sopache's Indian lands. It doesn't prohibit gaming outside of Fort Sopache's Indian lands. It only governs... But wait, how is the compact structured? I would have thought that the compact says this allows this sort of gaming at this location. And to the extent that it doesn't allow something, it's prohibited because the only way that you could have lawful gaming is under the compact. What am I missing there? Well, Your Honor, at the outset of the compact, it states that the compact governs gaming on the Fort Sopache's Indian lands. But nothing prohibits in that compact from a tribe or the Fort Sopache tribe from getting a state license, for instance, to game on fee lands or on another parcel. IGRA's scope only relates to tribal gaming on its Indian lands. The same for the compact. It only governs the tribe's gaming on its own Indian lands. Well, they're arguing that the disputed lands here, the Fort Sill lands, that were created after the passage of IGRA and therefore they're not permitted to host a casino facility. Is that their argument? That's one of their arguments, Your Honor. And again... What's wrong with that argument? Your Honor, that would not fall within the compact and it would not fall under the IGRA because lands that are taken in trust after 1988 are again outside the scope of the IGRA and the compact. And there was a decision on point in the Seventh Circuit related to this, which was the Stockbridge-Munsee community versus Wisconsin. The Seventh Circuit said that the act does not entitle anyone to gambling that is altogether outside the statutory scope, such as gambling on private land or on land taken into trust for a tribe after October 17, 1988. So, it doesn't prevent gambling on those lands. It doesn't even address or govern gambling on those lands. And finally, 2710 D7A2 is limited to only injunctive relief against Class 3 gaming. What Comanche seeks is to shut down the whole casino, including Class 2 gaming. And so, for that third reason, Comanche's claims do not fit within that abrogation. Comanche also seeks to utilize the Ex Parte Young exception to circumvent the tribe's sovereign immunity. But Ex Parte Young is also unavailable. In Seminole Tribe versus Florida, the Supreme Court held that the detailed remedial scheme in 2710 D prohibits implied remedies. And this court also held the same thing in Hartman versus Kickapoo. The Tenth Circuit is very clear that if Congress provides an express remedy, it bars implied remedies. And here, Congress provided an express remedy for claims that are in violation of a compact on Indian lands of a tribe. Hill versus Kemp, Safe Streets versus Hick and Looper, this circuit's arguments, it's very clear that if Congress has an express remedy, implied remedies are barred. That's exactly what Ex Parte Young is an implied remedy. So, that should end the Ex Parte Young exception on its own. Can I ask you about that, Mr. Carter? My understanding is that case law was predicated on a delay in negotiating in good faith for a tribal state compact. And so, I thought that the idea underlying those cases is that you can't have some sort of free-floating claim for an injunction based on some common law theory when Congress has specifically articulated in IGRA a specific mechanism for resolving disagreements between a state and a tribe when one party is ostensibly failing in negotiating good faith. But I don't understand how that, if my understanding of that case law is correct, why the creation of a statutory remedy in IGRA that the Comanche tribe is invoking that seems backward. They're not invoking a free-floating theory. They're invoking the very detailed remedial statute that you're pointing to. Well, Your Honor, the facts of Seminole Tribe did relate to failure to negotiate a compact in good faith, but the analysis related to 2710d as a whole. The remedy set forth in 2710d-7 relates to, or all of 2710d relates to compact negotiations enforcing compact. The analysis in Seminole Tribe is still applicable here. And the important part was that when Congress provides an express remedy, it bars other remedies. And that's what Congress did here in 2710d-7, is provide an express remedy, although it's modest, it's specific, and courts cannot read into additional remedies that provide broader relief when Congress specifically provides remedy. Maybe I misunderstood what you said earlier. I thought you had said earlier that IGRA specifically contemplates one of the prescribed remedies is a remedy for the violation of a tribal state compact. Did I misunderstand? Yes, Your Honor. When the state sues a tribe for violating that compact and the gaming occurs on the tribe's Indian lands, there's a specific remedy. Congress easily could have drafted a remedy where a tribe could sue another tribe for violating a compact or for gaming outside of Indian lands, but it did not to the exclusion of the type of remedy that Comanche Nation is seeking right now. May I ask something about the compact? Does it have any description of the geographical area that the compact covers? And in particular, does it say anything about a casino at the location that we're talking about here? No, Your Honor, it doesn't. If you look at the what the scope of the compact addresses, and it states that it addresses gaming on the Indian lands of the Fort Sioux Apache tribe, there's nothing in the compact that prohibits gaming outside the Indian lands. The compacts just govern, you know, how a tribe will perform its gaming, how much auditing rights the state has, you know, what reporting requirements there are. It doesn't address where a tribe can game or where it can't game. And that's why it does here. The compact is for gaming. Would you read that language you just read a moment ago? I thought you said it's on the Fort Sioux Indian, by the Fort Sioux Indian tribe on the Fort Sioux reservation or something like that. What did it say? Your Honor, it's on the compact covers Indian lands over which the tribe has jurisdiction and in the Indian lands of the tribe. That's all it governs. That's all it regulates. It governs gaming outside of the compact. It only governs gaming. Okay, so if it's land that Fort Sioux doesn't have jurisdiction over, which is essentially what the complaint argues, then it's not covered by the compact. So, there's no way it could violate the compact. It's just not covered by the compact. Exactly. Your point is okay. If you're right, Mr. Carter, is there any forum where Comanche could pursue these claims? I'm not sure about Comanche, but there are plenty of remedies in the Indie Gaming Regulatory Act for unlawful gaming. For example, the NIGC could issue a shutdown order of a casino. Your Honor, may I finish answering? Yes, please. The NIGC may issue a shutdown order of the casino if it's not on Indian lands. If it's outside of Indian lands, the state would also have prosecutorial jurisdiction and regulatory jurisdiction over that gaming, assuming sovereign immunity doesn't apply, but the regulations would still apply nonetheless. The United States could also have criminal enforcement jurisdiction for unlawful gaming under statutes such as 18 U.S.C. 1966 or 1166, excuse me, and 1955. Comanche would not have a private right of action. Under any of those provisions? Your Honor, they could under state law. If the gaming is not on Indian lands, they could have a right of action under state law if the state provides one, but I'm not aware of whether the state provides a private right of action such as for torts or tortious interference with a business. It's not necessarily prohibited. It's just not covered by IGRA at all. RICO might have a remedy also. Well, Your Honor, RICO... Well, you're saying there's... Well, okay. I'm going to address RICO quickly. Well, in RICO, RICO also has an express remedy for private plaintiffs and it is limited only to treble monetary damages, while the United States can bring an action under RICO and receive injunctive relief. In 1964, B is where it provides the United States could seek injunctive relief. Then in 1964, C, it specifically states that private parties can only receive treble monetary damages. Again, under Hill v. Kemp and Safe Streets v. Hickenlooper, those express remedies bar implied remedies. So, the court should not read into 1964 C to say, well, it's limited to monetary damages, but we should also give injunctive relief. That's just not what this court has done in the past and that's not what Congress prescribed in the RICO. Thank you, counsel. Your time is... Well, any other questions from the panel? No. Thank you. Thank you, Your Honor. Mr. Peikstad. Thank you, Judge. May it please the Wilson Peikstad, my service counsel to the Comanche Nation in this case, my co-counsel Shoney Blake and Joe Keene, as well as the chairman of the Comanche Nation Force, Tad Nippa, are here on the call. I'd like to focus on three elements of this case, and I think this is what the judges focused first on in the argument just now, that the defendants assert blanket immunity from suit as they operate an illegal casino on lands that are not eligible for gaming under the Indian Gaming Regulatory Act. The IGRAS terms plainly abrogate a tribe's sovereign immunity when one tribe brings an action to enjoin class three gaming activity of another tribe when that gaming activity violates a tribal state compact. Second, the defendants failed to raise many of their arguments at the district court that they raise now, thereby failing to preserve those arguments. The defendants have failed to cite the record for the arguments they did raise, so the court may assume the defendants did not preserve these issues for appeal. Also, the defendants have not argued plain error for any of the positions they've taken on appeal. As a result, the court may consider these arguments waived and decline to any issues that were not preserved, and we urge the court to do so. Mr. Pipestem, on your second and third arguments, why don't we have to consider those sui sponte since they involve federal court jurisdiction? So, first of all, because of waiver, the Tenth Circuit courts have said, Tenth Circuit case law and the court's rules regarding forfeiture and waiver, which we definitely have here, say that even in the case of sovereign immunity, the court does not have to take and consider those questions. That's a question of discretion of the court. So, even though there are questions here that have been don't relate to the issue of 12B1 jurisdiction. They're potentially collateral issues, but we don't think that's appropriately before the court. Many of them have, including a long list of these arguments that are made for the first time, the defendants argue there's no private right of action in EGRA because the remedial scheme does not allow it. There's no citation to this in the motion to dismiss, and there's no plain error argued. They argue that Indian lands at issue, the Indian lands at issue, I know that there's a disagreement. We believe these are, there's no dispute that these are Indian lands, but they can't be Indian lands under the Comanche Nations theory of this case. That's a merits-based argument that was first raised on appeal without plain error. With regard to some of the RICO claims, the issue of whether RICO establishes a private right of action for injunctive relief, first of all, those are, it's a failure to state a claim issue, and it's raised for the first time on appeal. So, to the extent that an immunity issue relies on the argument that we fail to allege individual allegations, the defendants abandon that argument after the TRO briefing. So, and again, many of these issues were raised for the first time on reply. The issue of Indian lands at issue, whether an original Kiowa allotment can be considered after it was transferred to the Fort Sill Apache tribe that can maintain that tribal status while it was still a Kiowa allotment, that was raised for the first time on reply. They argue any number of issues that are raised for the first time on appeal. So, let me ask about one we probably spent the most time on with the opposing council, whether there's a waiver of sovereign immunity under IGRA here, and there is a waiver of sovereign immunity, or Congress defeated, overruled sovereign immunity for suits by a tribe against class three gaming activity located on Indian lands, and it's clear this was Indian lands and conducted in violation of a compact. But the way the complaint here is framed, what you allege is this gaming is not on land of the Fort Sill Indian tribe, and therefore, that gaming is not covered by any compact. There's no compact that governs the gaming conducted by the Fort Sill tribe on lands not owned or governed, whatever the term was, I'm not sure, by the Fort Sill. So, why does not, are you saying that argument wasn't preserved below so we don't need to address it, or are you saying it's wrong on merits or both? We're saying that the compact language itself incorporates federal law. So, if you look at paragraph 5L of the compact between the Fort Sill Apache tribe and the state of Oklahoma, it incorporates these questions of Indian lands. So, it just mentions IGRA's Indian lands definition and the federal process for acquiring Indian lands for purposes. So, by incorporating federal law into the compact, it does not say that the compact approves of these lands being the Fort Sill Apache tribe's Indian lands that are available for gaming. It says that that is a question of federal law that should be determined in accordance with federal law and federal processes. So, and that is what is, we are litigating here, the question of those Indian lands. There's no doubt these are Indian lands under IGRA. We don't dispute that. We do dispute whether or not these lands are, have been, were taken into trust under the after-acquired provision of IGRA before 1988, the date of enactment, October 17th, 1988, the date of enactment of IGRA or after. We believe that they were taken into trust by the United States for the Fort Sill Apache tribe after that date. So, what the defendants have raised for the first time on appeal is that this was a allotment belonged to a Kiowa Indian, and it was under the jurisdiction of a Kiowa Indian. It was in trust for that individual. The United States transferred that land to the Fort Sill Apache tribe after October 17th, 1988. We believe that is a violation of the after-acquired provision of the Indian Gaming Regulatory Act. But you have to show, this waiver of sovereign unity in the language I read is that it's got to be contrary to a compact. Yes. And what you've added is that the compact itself incorporates federal Indian law restricting gaming. Is that what you're saying? Yes. So, by the language of the compact itself, it says that we defer, and this is my words, not the exact language of the compact, the federal processes for acquiring Indian lands for gaming purposes to the United States. Does Fort Sill have a casino somewhere else? I believe they do. I believe they do. I'm not sure though. So, if you're right about there being a violation of IGRA, then doesn't that obviate your ex parte young theory? In other words, you don't need ex parte young because you have a direct violation to pursue under IGRA. We believe in this, the Indian Gaming Regulatory Act, there's a narrow abrogation of tribal sovereignty limited to these sorts of claims. So, just the language of the statute is we rely on just the plain language of the statute. So, in this circumstance, the Comanche Nations, an Indian on the Salote allotment that was then transferred to the Fort Sill Apache tribe, we questioned whether that was a lawful transfer. But at the time, it was the jurisdiction of the Kiowa tribe and the United States took that land into trust after 1988 for the Fort Sill Apache tribe. So, that is a matter on the merits that will, in this complicated world of Indian lands in western North Carolina, that we hope to litigate at the district court. But we believe that we meet the plain language of the statute. But if you do, I think this was the question, you don't need ex parte young to get relief then? We don't need relief from ex parte young for our base claims. So, we also say that the ex parte young, we brought an action under RICO. So, we do believe that ex parte young does not allow them to raise effectively a sovereign immunity defense in that circumstance. But the RICO claim is dependent on an AGRA violation, is that correct? No, it's an entirely separate statute. So, AGRA incorporates- No, there has to be an underlying offense. Oh, yes. And that's the AGRA violation. Yes. So, first we have to establish it's illegal gambling, right? And that is a question under AGRA because again, we believe that for a number of reasons that we've identified. I just mentioned the lands here are not eligible for gaming. They're in trust, they're Indian lands, but they are not eligible for gaming for the Fort Sill Apache tribe. Just to make sure that I understand. So, the RICO claim is an independent claim, but the criminal enterprise is the AGRA violation. Well, the criminal enterprise is the illegal gambling operating outside of the Indian Gaming Regulatory Act. Okay. And your claim under ex parte young using RICO must- you have to show that RICO itself doesn't provide an exhaustive regulatory framework for how to deal with this illegality and therefore ex parte young would allow conjunctive relief. Is that your theory there? Well, yes. Now, again, we believe that the the issues that they have raised related to this were raised for the first time on appeal, but could you ask that again? I got turned around. I'll count it on people to understand things better than I express them. But generally, ex parte young does not allow injunctive relief when it's based on a statute that provides ample remedies which are assumed to be exhaustive. We have lots of remedies under RICO. If it's not in RICO, you can't go elsewhere to find a remedy and that would foreclose ex parte young suits. So, you're arguing in part, I gather, that RICO doesn't provide an exhaustive set of remedies and therefore you can seek injunctive relief through ex parte young for a RICO violation. Am I correct about that? Yes, we do not believe that RICO provides the sort of a comprehensive scheme. In fact, remedies are to be left to us to see. I'm sorry, your honor. You're not seeking damages. We are seeking damages, troubled damages against the individuals, not the tribe. Under RICO, we have not sued the Fort Sill Apache tribe. It's the officials of the tribe and the gaming officials who have worked to operate and continue to operate the casino. In their individual capacities? Yes, in their official and individual capacities. Can I interject with one question about the ex parte young theory against the tribal officials in their official capacities? As I understand it, the people that you have sued are members of the gaming committee and the business committee that voted as a part of a collective body to approve the commencement of gaming in the casino. But typically, you have to have an ongoing violation and you have to sue individuals that are part of that ongoing violation. These individuals seem to have voted at a discrete time. I don't think there's any allegations of a complaint that they have ongoing enforcement responsibilities, anything to do with the oversight of the casino. So, why are those appropriate individuals to have been named in their official capacities under ex parte young when they did not participate in an ongoing violation? They participated in a collective vote at a discrete time that has long passed. Well, the individuals, not only did they authorize the establishment of this casino, and you cannot lawfully authorize illegal conduct. That's one reason we believe that they're outside their sovereign immunity and we can bring these actions, but they continue to operate this illegal operation. These individuals? The individuals continue to be involved in the oversight and operation of the illegal gaming operation. So, there are cases in which they've been finding that the fact that there's a regulatory agency involved is sufficient to demonstrate that they continue to be involved in the operation of the illegal conduct. Well, Councilor, your time has expired. There doesn't seem to be any further questions from the panel. Everybody got that? So, Councilor excused and the case is submitted.